**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

---

**MSP REAL ESTATE, INC.
and DEER CREEK HOMES,**

        **Plaintiffs,**

  v.                                          **Case No. 11-C-281
(Consolidated with
Case No. 11-C-608)**

**CITY OF NEW BERLIN
and JACK F. CHIOVATERO,**

        **Defendants.**

---

## DECISION AND ORDER

---

This matter is before the Court on motion of the Plaintiffs MSP Real Estate, Inc. ("MSP") and Deer Creek Homes ("Deer Creek") (collectively the "Plaintiffs"), for an order pursuant to Federal Rule of Evidence 104(a) declaring the attorney-client privilege waived as to 72 documents produced by the Defendant City of New Berlin ("New Berlin"). The subject documents were produced in response to the Plaintiffs' June 16, 2010, and July 19, 2010, requests under Wisconsin's Open Records Law, Wis. Stat. § 19.35. The requests pertained to the Plaintiffs' proposed housing development at the City Center site in New Berlin.

New Berlin and Defendant Jack J. Chiovatero ("Chiovatero") (collectively the "Defendants") oppose the motion as to 30 of the 72 documents. Specifically, the Defendants claim that New Berlin inadvertently produced the following documents which they assert are privileged: Exhibit Nos. 4 (1st page), 11, 21, 22, 23, 24, 25, 26, 27 (1st page), 34 (1st page),

38, 39, 40 (stated to be privileged), 41 (1st page), 42 (1st page), 43 (1st page), 44 (1st page), 45 (1st page), 46 (stated to be privileged), 47 (stated to be privileged), 48, 49, 50, 52, 53, 54, 56, 60, and 61 (1st page).

Although the Defendants state that they are asserting 30 documents are privileged, the list only includes 29 documents. As a result, the Court reviewed the documents comprising Exhibit A, disclosing that it includes Exhibit 51, which was omitted from the Defendants' list. The Court will address the motion as to the 30 documents. However, the motion is granted as to the other 42 documents, since the Defendants do not contend those documents are privileged.

**Background**

On June 7, 2010, the New Berlin Common Council reconsidered approval of MSP's[1] multifamily apartment project in the New Berlin City Center area. (Blum Aff. ¶ 4.) Thereafter, MSP and its counsel, Foley & Lardner, intimated that the failure to approve the project could result in claims being brought against New Berlin by MSP. (*Id*. at ¶ 5.)

On June 16, 2010, New Berlin City Clerk Kari Morgan ("Morgan") received a request under the Open Records Law for disclosure of public records made by counsel for MSP relating to the MSP development application. (Morgan Aff. ¶ 3.) After assembling the responsive documents, Morgan reviewed any questions she had regarding the production of the subject documents with Blum. (*Id*. at ¶ 4.) Specifically, Morgan contacted Blum and told

---

[1] The affidavit of Mark G. Blum ("Blum"), the City Attorney for New Berlin, refers to "MSP Development," not MSP Real Estate, the Plaintiff in this action. For purposes of this Decision and Order, the Court uses MSP to refer to both entities, although it is unclear whether the "MSP Development" entity is involved in this action. (*See* Compl.; Disclosure Statement.)

2

him that she had some records that she thought might be attorney-client privileged and requested that he review them. (Blum Aff. ¶ 9). As Blum reviewed the records, he separated them into the following three piles: (1) documents to be released; (2) documents to be released after redaction; (3) documents to be withheld based on the attorney-client privilege. (*Id*. at ¶ 11.) The top of each pile was marked with a Post-It note instructing the City Clerk's office how to handle the documents in that pile, and the documents were given to the City Clerk's office for photocopying. (*Id*. at ¶ 12.)

In preparing the documents for copying, they were separated into three piles: (1) those to be released; (2) those to be released after redaction; and (3) those to be withheld on the grounds of attorney-client privilege. (Morgan Aff. ¶ 5.) Individuals hired as temporary summer help and staff interns performed the photocopying under the direction of Morgan and/or the Deputy City Clerk Christine Stefanich ("Stefanich"). (*Id*. at ¶ 6.) Morgan provided responses to the June 16, 2010, open records request on June 24, 2010 (131 pages), July 9, 2010 (39 pages), and July 20, 2010 (28 pages). (*Id*. at ¶ 7.)

On July 19, 2010, Morgan received a second open records request from MSP's counsel. (*Id*. at ¶ 9.) Morgan followed the same procedure that she had with respect to the June open records request, requesting that Blum review the records that she believed were attorney-client communications to determine whether they were indeed privileged. (*Id*. at ¶¶ 10-11.)

After Blum had reviewed the records, they were divided into the same categories as the June open records documents. (*Id*. at ¶ 11.) Morgan then asked Stefanich and the

3

interns to photocopy them. (*Id*. at ¶ 12.) The documents that were produced as a part of the second open records request were produced on July 30, 2010 (1039 pages), August 9, 2010 (1082 pages), and August 20, 2010 (5699 pages, 29 large map copies, 60 small map copies, and four cassette tapes), and September 13, 2010 (914 pages and a compact disc). (*Id*. at ¶ 13.)

On March 21, 2011, the Plaintiffs filed this federal civil rights action alleging violations of the Fair Housing Act (the "FHA"), 42 U.S.C. § 3601, *et seq.*, and Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12311, *et seq*. Shortly, thereafter, the Plaintiffs' attorneys reviewed the documents that New Berlin had produced several months earlier in response to MSP's open records requests. Upon doing so, counsel discerned that a number of those documents appeared to reflect privileged communications between New Berlin officials. On April 6, 2011, the Plaintiffs filed their motion seeking an order declaring privilege waived as to certain documents.

**Analysis**

MSP asserts that New Berlin has waived its right to the attorney-client privilege that may have existed with respect to certain documents produced by New Berlin. (Pls.' Mem. Supp. Mot. Order, 3.) Privileges "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501. As noted by MSP, the exception to Rule 501, for cases where "an element of a claim or defense as to which State law supplies the rule of decision," does not apply in this case, which is based on the federal FHA and ADA. (*See* Pls.' Mem.

Supp. Mot. Order, 9.) Federal Rule of Evidence 502(b) does not apply because the disclosure of documents by New Berlin did not occur "in a Federal proceeding or to a Federal office or agency." Fed. R. Evid. 502(b). Therefore, federal common law applies.

When reviewing claims of privilege, a three-part inquiry is used. *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 387 (7th Cir. 2008). The Court must determine whether the disclosed documents were privileged, and if so, the Court must then determine if the disclosure was inadvertent. *Id.* at 387-88. Finally, "even if the document[s] [are] found to be privileged and inadvertently produced, the [C]ourt must, nonetheless, determine whether privilege was waived." *Id.* at 388.

**A. Were the Disclosed Documents Privileged?**

The first part of the inquiry is whether the disclosed documents were privileged. The scope of the attorney-client privilege is narrow, and has been defined as:

> (1) [w]here legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

*United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991); *see also Harmony Gold U.S.A., Inc. v. FASA Corp.*, 169 F.R.D. 113, 115 (N.D. Ill. 1996) (same), *Judson Atkinson*, 529 F.3d at 388. In this case, neither party disputes that the disclosed documents were privileged, and therefore, the Court concludes that the documents were privileged.

5

**B. Was the Disclosure Inadvertent?**

The next part in the Court's inquiry is whether the disclosure was inadvertent. MSP asserts that the disclosure was voluntary. (Pls.' Mem. Supp. Mot. Order, 11 n.10.) "Courts have not established a bright-line rule for determining whether a document was inadvertently produced; instead, courts look at the circumstances surrounding the disclosure." *Judson Atkinson*, 529 F.3d at 388 (citing *Harmony Gold*, 169 F.R.D. at 116). In determining whether the disclosure was inadvertent, the Court must look to the totality of the circumstances. *Wunderlich-Malec Sys., Inc. v. Eisenmann Corp.*, No. 05 C 4343, 2007 WL 3086006, at *3 (N.D. Ill. Oct. 18, 2007). Factors include "the total number of documents reviewed, the procedures used to review the documents before they were produced, and the actions of the producing party after discovering that the documents had been produced." *Id.*

New Berlin disclosed a rather large production of 8932 total pages of documents to MSP. The relatively large amount of total pages reviewed and produced by New Berlin support a finding of inadvertence.[2] Additionally, New Berlin's actions after the disclosure support a finding of inadvertence. An hour before MSP filed its motion for a declaration that the privilege had been waived, MSP notified New Berlin that it had produced privileged communications to MSP. Such short notice did not allow New Berlin adequate time to take action to get the documents back. (*See* Blum Aff. ¶ 19.)

---

[2] *See Kmart Corp. v. Footstar, Inc.*, No. 09 C 3607, 2010 WL 4512337, at *4 (N.D. Ill. Nov. 2, 2010) (stating party produced 4,500 documents, "which is a fairly significant number of pages."), *Wunderlich-Malec Sys.*, 2007 WL 3086006, at *3 (holding that 11,167 pages of documents is a "relatively large number"), *Cuna Mut. Ins. Soc'y v. O.M. Fin. Assocs., L.L.P.*, No. 07-C-057-S, 2007 WL 5356661, at *1 (W.D. Wis. June 13, 2007) (finding 15 pages out of 2,172 documents were inadvertently produced), *Parkway Gallery Furniture, Inc. v. Kittinger/Penn. House Grp., Inc.*, 116 F.R.D. 46, 51 (M.D.N.C. 1987) (stating that document production of 12,000 pages was "massive).

6

The procedure that New Berlin used to review the documents "is more ambiguous." *See Wunderlich-Malec Sys.*, 2007 WL 3086006, at *4. New Berlin provides affidavits from Blum and Morgan which describe the precautions taken to prevent disclosure. *See also Judson Atkinson*, 529 F.3d at 388. The documents were initially reviewed by Morgan. Those documents that Morgan believed to be privileged were then reviewed by Blum, who segregated them into piles with Post-It notes identifying the separate piles. (Blum Aff. ¶¶ 8-12.) *See also Sanner v. Bd. of Trade of City of Chi.*, 181 F.R.D. 374, 378-79 (N.D. Ill. 1998) (holding production of documents was inadvertent where defendant's counsel reviewed documents and "attached a 'pink sheet' to the documents at issue marking such documents as privileged," and instructed his staff to remove all documents marked with pink sheets from the documents to be produced.)

Neither party knows how the privileged documents came to be produced to MSP. New Berlin believes the privileged documents were released due to errors made during the photocopying process. (Defs.' Mem. Opp'n Mot. Order, 3.) This uncertainty leaves unanswered questions about New Berlin's procedure. Additionally, Morgan's training or other qualifications in making the initial selection of documents for review by Blum is not disclosed by either her affidavit or Blum's.

Regardless, New Berlin had a procedure in place and "[t]here is nothing clearly inadequate about the process described" to indicate that the procedures used by New Berlin "were so deficient" to conclude that the disclosure was voluntary. *See Judson Atkinson*, 529

7

F.3d at 388. Weighing all of the factors and the totality of the circumstances, the evidence supports a finding of inadvertence.

**C. Was the Privilege Waived?**

"[T]he power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." *Commodity Futures Trading Comm. v. Weintraub*, 471 U.S. 343, 348 (1986). New Berlin asserts that the authority to waive the attorney-client privilege rests solely with the Common Council of the City of New Berlin as the municipality's "officers and directors," and that the Common Council did not authorize the waiver of the privilege. (Defs.' Mem. Opp'n Mot. Order, 2-3.) Under Wisconsin law, "corporate authority of the city shall be vested in the mayor and common council." Wis. Stat. Ann. § 62.09(7)(a) (West 2010).

However, the Plaintiffs' motion addresses the question of inadvertent disclosure, which by its nature suggests that in most instances the waiver would not be expressly authorized by any municipal corporate officers or director. *See Judson Atkinson*, 529 F.3d at 389 (holding that the producing party did not waive its privilege when counsel inadvertently disclosed privileged material); *Santullo v. City of Woburn*, No. 07-11478-RWZ, 2008 WL 2778819, at *1-*2 (D. Mass. July 14, 2008) (holding that the municipality waived its attorney-client privilege in regards to its inadvertent production of minutes of an executive meeting and privileged e-mails); *Wunderlich-Malec Sys.*, 2007 WL 3086006, at *4, *6 (finding waiver of privilege when the producing party's counsel inadvertently disclosed privileged documents); *Draus v. Healthtrust Inc.-The Hosp. Co.*, 172 F.R.D. 384, 385-86 (S.D. Ind. 1997) (finding

8

waiver where the defendant's counsel inadvertently produced privileged materials). New Berlin cites no authority to substantiate its claim that a municipal corporation cannot inadvertently waive its privilege.[3] An inadvertent disclosure is a separate issue from an express waiver, and therefore, the Court continues with the analysis of whether New Berlin inadvertently waived its attorney-client privilege.

"When determining whether an inadvertent disclosure results in a waiver, three different approaches have been used: (1) a subjective approach; (2) an objective approach; and (3) a balancing test." *Harmony Gold*, 169 F.R.D. at 116. The court of appeals and other district courts within this circuit have applied the balancing test. *See Judson Atkinson*, 529 F.3d at 388; *Stewart v. Gen. Motors Corp.*, No. 86 C 4741, 1988 WL 6927, at *2-*3 (N.D. Ill. Jan. 27, 1988), *aff'd*, 892 F.2d 81 (7th Cir. 1989); *United States v. Menominee Tribal Enters.*, No. 07-C-316, 2009 WL 637188, at *2 (E.D. Wis. Mar. 10, 2009); *Snap-On Inc. v. Hunter Eng'r Co.*, 29 F. Supp. 2d 965, 971-72 (E.D. Wis. 1998).

Under the balancing test, the Court considers: "(1) the reasonableness of the precautions taken to prevent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness." *Judson Atkinson*, 529 F.3d at 388-89 (citing *Harmony Gold*, 169 F.R.D. at 116-17).

---

[3] New Berlin cites *Ross v. City of Memphis*, 423 F.3d 596, 603 (6th Cir. 2005), asserting that only the Common Council of the City of New Berlin has the authority to waive the privilege. In *Ross*, the Sixth Circuit ruled that a municipality can assert the attorney-client privilege in civil proceedings with a former employee. *Ross* did not involve an inadvertent waiver. Rather, the question was whether a former municipal employee can impliedly waive the city's attorney-client privilege by "inject[ing] the [city] attorney's advice into litigation." *Id.* at 598, 599. Therefore, *Ross* is not relevant to the question before this Court, whether or not New Berlin waived its attorney-client privilege by its inadvertent disclosure of privileged documents to MSP.

9

The Court first addresses the reasonableness of the precautions taken by New Berlin to prevent disclosure.

> While this is in some ways similar to the third step of the inadvertence inquiry, it is different in that here the emphasis is not on whether the production was truly accidental, but rather on whether the procedures used were 'reasonable.' In other words, the Court focused earlier on the subjective intent of the lawyers as manifested in their review procedures, while now it focuses on the objective reasonableness of the procedures.

*Wunderlich-Malec Sys.*, 2007 WL 3086006, at *5.

New Berlin must support its assertion that it used reasonable precautions with specific facts which would demonstrate that a sufficient screening process was used. *See Kmart Corp.*, 2010 WL 4512337, at *4. When the disclosure is complete, as in the instant case, "a court order cannot restore confidentiality and, at best, can only attempt to restrain further erosion. Therefore, at a minimum, such an order requires a very strong showing with respect to the other factors." *Stewart*, 1988 WL 6927, at *3.

The affidavits of Blum and Morgan describe the procedures followed by New Berlin to prevent disclosure of privileged communications. Upon receiving the MSP's open record requests, Morgan assembled the pertinent New Berlin records and requested that the officials involved in the MSP development produce their records. When Morgan believed she had privileged records she contacted Blum and requested that he review them. Blum reviewed the records, segregated them into three piles, placed a Post-It note on each pile, and provided them to the City Clerk's Office for copying. Neither Blum or Morgan know how the privileged documents were produced to MSP, but they surmise that the privileged documents

10

were released through errors made during the photocopying process. (Defs.' Mem. Opp'n Mot. Order, 3.)

The procedure of segregating the documents and identifying each pile with one Post-It note favors a finding that the procedure was not a reasonable precaution to prevent disclosure. *See Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 445 (S.D.N.Y. 1995) (holding that the procedure of physically removing documents and replacing them with a designation of privilege was "well-designed and was preferable, for example, to the use of easily dislodged 'post-its'"). While some e-mails were labeled as privileged by Blum at the time they were created, the reviewed documents were not individually identified or marked as privileged or not. *See Stoner v. N.Y. City Ballet Co.*, No. 99Civ.0196(BSJ)(MHD), 2002 WL 31875404, at *2 (S.D.N.Y. Dec. 24, 2002) (finding no waiver where an attorney was assigned to review all documents for privilege and to tag all privileged documents prior to copying); *Lloyds Bank PLC v. Republic of Ecuador*, No. 96 Civ. 1789 DC., 1997 WL 96591, at *4 (S.D.N.Y. Mar. 5, 1997) (holding that having attorneys review all documents, clearly marking privileged documents, and segregating privileged documents for placement in a privilege log was "sufficiently careful").

New Berlin does not know how the privileged documents were produced to MSP, even though the copying process was under the direction of Morgan and/or Stefanich. (*See* Morgan Aff. ¶ 6.) While one e-mail was produced with a copy of a Post-It note attached with Blum's initials indicating it was appropriate to release the document, (Pls.' Mem. Supp. Mot. Order, 14), MSP asserts that none of the privileged documents included copies of the

11

Post-It notes or other marks identifying their status. (Pls.' Reply Supp. Mot. Order, 5 n.2.) New Berlin's inability to identify how the error occurred, and the absence of the identifying Post-It notes, leaves an evidentiary gap. *See Stewart*, 1988 WL 6927, at *3. Exactly how the privileged documents came to be produced is open to speculation. The failure to identify and mark individual documents and relying on Post-It notes to identify each pile supports a finding that the precautions taken to prevent disclosure were not reasonable.

The absence of a privilege log and the lack of any apparent time pressure weigh in favor of a finding that the precautions taken to prevent disclosure were not reasonable. *See Wunderlich-Malec Sys.*, 2007 WL 3086006, at *5 (weighing in favor of no waiver when producing party produced a privilege log that identified documents as privileged); *Lloyds Bank*, 1997 WL 96591, at *4 (same); *But see Harmony Gold*, 169 F.R.D. at 117 (holding that the disclosure of documents placed on a privilege log lead to the conclusion that the procedure was "patently inadequate"). There is no indication that New Berlin created a privilege log to identify and keep track of the privileged communications, and New Berlin did not provide one to MSP. (Pls.' Mem. Supp. Mot. Order, 6.) The procedure employed by New Berlin did not identify, track, or label individual privileged documents, which would have alerted both parties to the privileged nature of the e-mails.

Furthermore, New Berlin was not subjected to time pressure in responding to MSP's requests. MSP made the record requests on June 16, 2010, and July 19, 2010, and Blum was notified in late August 2010 that MSP would be preparing a complaint. (Blum Aff. ¶¶ 8, 13-14.) Accordingly, New Berlin's first six productions, all produced by August 20,

2010, were not made under time pressure or threat of litigation. (Morgan Aff. ¶¶ 7, 13.) Morgan did ask that the New Berlin officials respond promptly to the request, but there is no indication that this was imposed by MSP or others outside the City Clerk's Office. (Pls.' Mem. Supp. Mot. Order, 4.) New Berlin does not indicate that it faced significant time pressure which could account for the inadvertent disclosure, nor was it facing litigation or a deadline, when it responded to MSP's record requests. *See Draus*, 172 F.R.D. at 388 (holding that precautions taken were not reasonable "where those precautions obviously failed . . . [and the] record here does not indicate any substantial time pressure . . . ."). "In the absence of any extenuating circumstances such as extraordinary time pressure, production of [documents] like this . . . to opposing counsel . . . shows that the steps taken to avoid inadvertent production were not reasonable." *Id.*

The absence of attorney involvement and supervision in the initial review process also supports a finding that the precautions were not reasonable. Blum was involved in the review of the documents when Morgan "had questions regarding the inclusion of records." (Morgan Aff. ¶ 4.) The fact that the City Clerk, and not an attorney, reviewed the documents is not unreasonable in every case. *See Coburn Grp., LLC v. Whitecap Advisors LLC*, 640 F. Supp. 2d 1032, 1039 (N.D. Ill. 2009) (citing *Heriot v. Byrne*, 257 F.R.D. 645, 660 n.10 (N.D. Ill. 2009)). Nevertheless, the majority of the supervision and review was done by Morgan, and there is no indication she had appropriate training for that task.

The City Clerk is the "legal custodian for the City Council," City of New Berlin Municipal Code § 59-3(B), and is "responsible by law to keep and preserve any city records

13

or file, deposit or keep such records in . . . her office, or is lawfully in possession or entitled to keep possession of such public records." City of New Berlin Mun. Code § 59-1. Although Morgan is responsible for preserving and keeping City records, the City Attorney is responsible for "provid[ing] the City's general legal services." City of New Berlin Mun. Code § 51-3(A). The City Clerk does not have the legal training necessary to implement and oversee reasonable review procedures. *See Coburn Grp.*, 640 F. Supp. 2d at 1039 (finding that the use of experienced paralegals who followed a protocol implemented by counsel, which called for the paralegals to identify and mark for counsel's review any correspondence between counsel and employees, and to identify and mark as privileged any correspondence between employees and outside counsel, was reasonable).

Blum reviewed at least some of the documents. (Pls.' Mem. Supp. Mot. Order, 13-14.) Nevertheless, there is no indication that Blum's involvement was more substantial than reviewing the documents deemed privileged by Morgan and segregating those documents into piles. (Blum Aff. ¶¶ 8-12.) *See Judson Atkinson*, 529 F.3d at 388-89 (finding precautions were adequate where attorney supervised production process); *Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc.*, 257 F.R.D. 456, 461 (N.D. Ill. 2008) (holding that having an attorney organize all documents and remove those that were privileged were reasonable precautions); *Purizer Corp. v. Battelle Mem'l Inst.*, No. 01 C 6360, 2002 WL 1400263, at *2 (N.D. Ill. June 27, 2002) (holding that producing party took reasonable precautions by using two experienced attorneys and legal assistants, who received instructions from counsel as to how to review documents for privilege). New Berlin's failure to have the entire document

14

review process supervised by an attorney, legal assistant, or paralegal or to establish that Morgan had appropriate training to perform the task supports a finding that the precautions taken to prevent disclosure were not reasonable.

Additionally, as aptly stated in *Wunderlich-Malec Systems*, 2007 WL 3086006, at *5, "one crucial fact speaks for itself: the disputed documents were inadvertently produced two separate times . . . [A]ny procedure which fails in two consecutive reviews to reveal documents that have already been identified as privileged is unreasonable." In this matter, New Berlin produced privileged documents in at least three separate productions of 131 pages, 1039 pages, and 5699 pages, (Pls.' Reply Supp. Mot. Order, 8), and some e-mails were produced multiple times. (Pls.' Mem. Supp. Mot. Order, 13.) The three document productions, when taken individually, are not so voluminous that it would have been unreasonable to expect Blum or others to review each document before it was copied and sent to MSP. *See Draus*, 172 F.R.D. at 388-89. New Berlin's procedure failed at least three times to prevent privileged documents being produced to opposing counsel, which supports a finding that the precautions taken were not reasonable. *See Wunderlich-Malec Systems*, 2007 WL 3086006, at *5.

Finally, MSP asserts that New Berlin did not take reasonable precautions because several privileged e-mails from New Berlin explicitly stated the communication was privileged. (Pls.' Mem. Supp. Mot. Order, 12.) Several e-mails produced were labeled "PRIVILEGED ATTORNEY-CLIENT COMMUNICATION," and several others included confidentiality notices at the end of the e-mails. (*See* Ex. A, Ex. Nos. 4, 11, 21, 25, 26, 38, 40,

46, 47, 51, and 55.) "Even a cursory review would have alerted an attorney" to the privileged nature of the communications. *See Richmark Corp. v. Timber Falling Consultants, Inc.*, 126 F.R.D. 58, 61 (D. Or. 1989); *Draus*, 172 F.R.D. at 388. The Court concludes that New Berlin failed to take reasonable precautions to prevent disclosure and that this factor favors the finding that New Berlin waived the privilege.

The second factor, the time taken to rectify the error, favors a finding of no waiver. New Berlin was notified on April 5, 2011, that MSP had privileged communications from New Berlin. (Blum Aff. ¶ 19.) However, that day, MSP also filed its motion for a ruling that New Berlin had waived its privilege as to the 70 documents. (*Id.*) New Berlin asserts that, prior to MSP's April 5, 2011, notification, it was unaware of the disclosures (Defs.' Mem. Opp'n Mot. Order, 3), and MSP does not know whether New Berlin was aware of the disclosure prior to the notification. (Pls.' Mem. Supp. Mot. Order, 15.)

New Berlin was not aware of the disclosure until MSP notified them, and therefore, New Berlin did not have sufficient time to correct its mistake. *See Judson Atkinson*, 529 F.3d at 389 (holding that disclosing party took appropriate steps to rectify the inadvertent disclosure after it was informed through a memorandum filed by the receiving party); *Arch Coal, Inc. v. Fed. Ins. Co.*, No. 4:05CV00712 ERW, 2006 WL 1391317, at *2 (E.D. Mo. May 22, 2006) ("In evaluating promptness at least one court has considered when the disclosing party realized, or should have realized, the inadvertent disclosure"); *Harmony Gold*, 169 F.R.D. at 117 (holding that disclosing party "dragged its feet in taking appropriate corrective

16

action after learning of its inadvertent disclosure" when it waited two weeks after being notified by the other party).

The Court next addresses the scope of discovery. "The broader the scope of discovery, the more extensive a party's disclosure of confidential materials may be without waiving the privilege, and vice versa." *Kmart Corp.*, 2010 WL 4512337, at *4 (citation omitted). In this case, the scope of discovery entailed two open records requests by MSP. The first records request, dated June 16, 2010, was fairly narrow, and sought e-mail communications between New Berlin officials from the period of March 1, 2010, to June 16, 2010, regarding MSP's planned development. (Pls.' Mem. Supp. Mot. Order, 3.) The second request, dated July 19, 2010, "was broader, seeking virtually all documents relating to the project and the defendants' actions with respect to it." (*Id.*)

In response to these requests, New Berlin produced 8932 pages of documents to MSP's counsel. (Defs.' Mem. Opp'n Mot., 1.) The documents from the June 16 request were produced in installments of 131, 39, and 28 pages. (Morgan Aff. ¶ 7.) The documents from the July 19 request were produced in four separate installments of 1039 pages, 1082 pages, 5699 pages, and 914 pages. (*Id.* at ¶ 13.) As stated previously, New Berlin made a rather large production of documents. *See also, Bud Antle, Inc. v. Grow-Tech Inc.*, 131 F.R.D. 179, 183 (N.D. Cal. 1990) (holding that scope of discovery was fairly broad with an initial review of 6000 documents, with 2500 to 3000 being produced for inspection). Included in this production were plans, drawings, and meeting minutes that would require little or no review, (Pls.' Mem. Supp. Mot. Order, 16); however, such documents do not account for a large

17

portion of the total documents produced. (Morgan Aff. ¶ 13.) *See Kmart Corp.*, 2010 WL 4512337, at *4. The Court concludes that this factor does not weigh strongly for or against a finding of waiver.

The next factor considered is the extent of the disclosure. New Berlin produced 8932 pages of documents, of which it now asserts 30 are privileged. (Defs.' Mem. Opp'n Mot. Order, 1-2.) MSP contends that because New Berlin only produced four boxes of documents, this disclosure was "a grossly unreasonable amount of error." (Pls.' Mem. Supp. Mot. Order, 16.) The privileged documents constitute less than 1% of the total number of documents produced. However, the privileged documents were produced in three separate productions of 131 pages, 1039 pages, and 5699 pages. (Pls.' Reply Supp. Mot. Order, 8.) These individual productions are "by no means a huge volume." *Draus*, 172 F.R.D. at 388. However, MSP has not identified the number of privileged documents disclosed in each production, other than to state that "the vast majority of the privileged documents were produced in response to the July 19 request." (Pls.' Mem. Supp. Mot. Order, 13.) This factor also does not weigh strongly in favor or against a finding of waiver.

The final factor, fairness, has been identified as "the overriding issue" in determining whether an inadvertent disclosure of privileged documents should operate as a waiver. *Wunderlich-Malec Sys.*, 2007 WL 3086006, at *6. MSP asserts that it would be "unreasonable and highly prejudicial to require that [MSP] return the e-mails" because MSP's counsel and executives have read the e-mails and have incorporated them into their thoughts. (Pls.' Mem. Supp. Mot. Order, 17.) New Berlin counters that the Plaintiffs did not use the e-

mails as a basis for their Complaint and, therefore, they would not be prejudiced in any way if they were required to return the e-mails. (Defs.' Mem. Opp'n Mot. Order, 4.)

In cases involving waivers of privilege, "a norm of proportionality" has been employed. *Wunderlich-Malec Sys.*, 2007 WL 3086006, at *6 (citing *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1127 (7th Cir. 1997) ("But the severity of the punishment for a mistake should be proportioned to the gravity of the mistake")). New Berlin has not identified any "disproportionately harsh or unfair consequences" that it would encounter as a result of a waiver. *See Wunderlich-Malec Sys.*, 2007 WL 3086006, at *6.

Conversely, MSP's counsel and executives read the e-mails in their entirety before New Berlin asserted the privilege and MSP "[has] incorporated them into [its] thoughts relating to the prosecution of this lawsuit." (Pls.' Mem. Supp. Mot. Order, 17.) *See Wunderlich-Malec Sys.*, 2007 WL 3086006, at *6 (holding that "overriding concerns of fairness dictate that Wunderlich should not be allowed to 'unring the bell' and deprive Eisenmann of documents that could be important"); *Harmony Gold*, 169 F.R.D. at 118 ("[T]he bell has already rung, and the court cannot now unring it by denying defendant access to the document") (citation omitted); *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., Inc.*, 132 F.R.D. 204, 209 (N.D. Ind. 1990) ("Given the extent of disclosure . . . fairness dictates that Golden Valley be allowed to utilize its windfall considering that it already has the document and has utilized it . . . ."); *Bud Antle*, 131 F.R.D. at 183 ("[F]airness dictates that the privilege must be waived. The Letter was thoroughly disclosed to defendants in good faith .

19

. . Defendants have analyzed the Letter, have possibly disclosed it to experts, and have indicated a strong reliance on it for the purposes of their defense . . . .").

Additionally, the e-mails are relevant to the primary focus of this case, mainly New Berlin's denial of MSP's application for a housing development. *See also Draus*, 172 F.R.D. at 389 (holding that the issue of fairness would resolve doubts in favor of a finding of a waiver because the disclosed letter "is relevant to some of the core issues in this case"). The final factor, the overriding issue of fairness, supports a finding of a waiver as to the 30 contested documents.

In conclusion, for the reasons stated herein, MSP's motion for order declaring privilege waived as to certain documents is granted.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

The Plaintiffs' motion for order declaring the privilege waived as to certain documents (Docket No. 4) is **GRANTED**.

Dated at Milwaukee, Wisconsin this 22nd day of July, 2011.

**BY THE COURT**

*s/ Rudolph T. Randa*
**Hon. Rudolph T. Randa**
**U.S. District Judge**